## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **DOLCE & GABBANA** | : | |
| **TRADEMARKS S.R.L.,** | : | Case No. _____ |
| **Via Goldoni 10** | : | |
| **20129 Milan, Italy** | : | Judge: _____ |
| | : | |
| **Plaintiff,** | : | |
| | : | **COMPLAINT FOR** |
| **vs.** | : | **TRADEMARK INFRINGEMENT,** |
| | : | **TRADEMARK DILUTION, CIVIL** |
| **TXT ENTERPRISES, INC.** | : | **COUNTERFEITING AND UNFAIR** |
| **2431 Merced Avenue** | : | **COMPETITION** |
| **South El Monte, California 91733** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

Plaintiff Dolce & Gabbana Trademarks S.r.l. ("D&G") states for its Complaint against Defendant TXT Enterprises, Inc. ("TXT" or "Defendant") as follows:

### NATURE OF THE CASE

1.     D&G is a company in the Dolce & Gabbana Group, a world-famous Italian fashion house.  The U.S. and international trademarks and trademark registrations owned by D&G represent and protect one of the world's most famous brands in the luxury fashion industry, and these trademarks have long been used on clothing, jewelry, cosmetics, sunglasses and eyewear sold to and worn by consumers all over the world.  As a result of its success in the industry, the D&G logo "is often rated among the most popular and instantly recognizable logos in the fashion world."[1]  Defendant TXT is attempting to use D&G's trademarks and intellectual property on its eyewear products to profit from D&G's considerable brand power, and is competing unfairly against D&G using products deliberately designed to infringe upon and copy D&G's marks.  D&G is

---

[1] http://famouslogos.net/dolce-gabbana-logo/

bringing this suit to stop TXT's unfair and infringing conduct and to recover the damages that TXT's conduct has caused to D&G.

## PARTIES, VENUE AND JURISDICTION

2.     Plaintiff D&G is an Italian limited liability company, with its principal place of business in Milan, Italy.

3.     On information and belief, Defendant TXT is a corporation organized under the laws of California, having an address at 2431 Merced Avenue, South El Monte, California 91733.

4.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338(b), because this action arises under the Lanham Act, 15 U.S.C. §1051, *et seq*. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

5.     Personal jurisdiction over Defendant and venue are proper in this State and this District because TXT has inserted goods that infringe on D&G's intellectual property into the "stream of commerce," through distribution channels known and intended by TXT to have made TXT's infringing products available for sale to consumers nationwide, in this State and in this District.

6.     The amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

### A.     The Dolce & Gabbana Marks

7.     D&G is the owner of several U.S. federal registrations relating to its distinctive and famous marks, D&G, D&G DOLCE & GABBANA, and DOLCE & GABBANA used on, and registered for a wide variety of goods and services, including

but not limited to sunglass and eyeglass goods and related goods in International Class 009.

8.     In addition, D&G is the owner of numerous additional U.S. trademark registrations and U.S. common law trademarks for D&G's well-known, distinctive and famous trademarks comprising the marks DG, D&G, D&G DOLCE & GABBANA and DOLCE & GABBANA covering its famous D&G DOLCE & GABBANA brand and family of D&G trademarks.

9.     While the following list is not exhaustive, particularly pertinent to this Complaint are the following relevant U.S. trademark registrations held by D&G:

a)     Registration No. 3,108,433, for the mark D&G, issued on June 27, 2006, in several International Classes, but pertinent to this Complaint, in International 009 in connection with "Spectacles, sunglasses, spectacle frames, spectacle lenses, spectacle cases, and contact lenses" (filed on June 28, 2004 based on §1(a) asserting first use in 1998);

b)     Registration No. 3,964,224, for the mark D&G (Stylized), issued on May 24, 2011, in several International Classes, but pertinent to this Complaint, in International Class 009 in connection with "Eyeglasses; sunglasses; eyeglass frames; lenses for sunglasses and eyeglasses; contact lenses; eyeglass cases; eyeglass chains; timers" (based on § 44(e) foreign registration dated February 22, 1999);

c)     Registration No. 3,983,307, for the mark D&G DOLCE & GABBANA and Design, issued on June 28, 2011, in several International Classes, but pertinent to this Complaint, in International Class 009 in connection with "Eyeglasses; sunglasses; eyeglass frames; lenses for sunglasses and eyeglasses; contact lenses; eyeglass cases; eyeglass chains; timers" (based on § 44(e) foreign registration dated June 7, 1994).

d)      Registration No. 1,742,622, for the mark DOLCE & GABBANA, issued on December 29, 1992, in several International Classes, but pertinent to this Complaint, in International Class 009 in connection with "Eyeglasses" (based on § 44(d) and § 44(e) asserting foreign priority application filing date of June 27, 1990).

Copies of these registrations are attached hereto as Exhibits 1-4.

10.      D&G, through its authorized licensees and sub-licensees also has made prior, widespread and longstanding use in the United States, of the common law mark "DG" for sunglass goods.

11.      D&G's well-known and famous family of registered and common law D&G marks referenced in the previous paragraphs, and the registrations cited in Paragraph 9 above, are collectively referred to hereafter as the "D&G Marks."

12.      D&G, through its authorized licensees and sub-licensees, has engaged in open, notorious and extensive widespread use, promotion, and advertising of its D&G Marks (including, but not limited to the designation DG) for sunglass goods worldwide for nearly two decades, and D&G is very well-known and well recognized as the source of sunglass goods bearing D&G's D&G Marks. D&G, both for itself and through its authorized licensees, has expended substantial amounts of time, money, and effort in advertising and promoting its D&G Marks over many years, and in establishing and preserving the goodwill associated therewith, and the goodwill associated with D&G's D&G Marks is a valuable asset to D&G.

13.      The D&G Marks are famous within the meaning of 15 U.S.C. § 1125(c).

4

### B. TXT's Infringement of D&G's Marks

14. On information and belief, TXT is a wholesale manufacturer and seller of clothing and accessories. In the specific context of this case, TXT manufactures, or has manufactured at its direction, sunglasses and eyewear for sale across the United States and around the world.

15. As described further below, TXT manufactures, has manufactured on its behalf, and/or sells certain sunglass and eyewear products that infringe on the D&G Marks. Specifically, the design of TXT's infringing eyewear contains interlocking letters that appear to be an interlocking "D" and "G."

16. Upon information and belief, TXT causes sunglasses and eyewear products bearing the TXT Marks to be manufactured in China and imported into the United States.

17. TXT is the owner of three trademark registrations for design marks for sunglass/eyewear products that infringe D&G's Marks. These trademark registrations issued between 2007 and 2010, and listed first use dates at similar times, meaning that D&G's prior longstanding and well-known use and registration of its D&G Marks as described above is well prior to TXT's filing dates, and also well prior to TXT's alleged first use dates asserted in TXT's registrations. Therefore, D&G has both filing priority and use priority over TXT's Marks.

18. The TXT trademark registrations for the TXT Marks comprise the following designs:



Registration No. 3,441,927



Registration No. 3,856,464



Registration No. 3,295,767

The foregoing are registered for sunglasses and eyewear goods and related accessories (hereinafter the "TXT Registrations").

19.     Each of TXT's registered trademarks referenced above ("TXT Marks") purports to trademark an interlocking "I" and "G." In each of TXT's designs, the letter "I" is made to look as if it is an overlapped "D" in connection with a "G." Consumers could therefore (and D&G asserts likely do), view the interlocking letters as an interlocking of the letters "D" and "G." This is evidenced by TXT's designs themselves, as well as the United States Patent and Trademark Office's Trademark Search Facility Classification Code, which identifies an interpretation of the design of TXT's Marks as "DG."

6

20. D&G has separately filed Petitions to Cancel the registrations for the TXT Marks with the United States Patent and Trademark Office. D&G will request a suspension of that proceeding in light of the institution of this litigation.

21. TXT's products bearing the TXT Marks are the same as and overlap in the marketplace with the goods offered by D&G's licensees or sub-licensees under its D&G Marks. These goods are promoted to the same or similar class of consumers, and at least in some cases, are available through the same or similar channels of trade.

22. TXT's products bear marks that are nearly identical to, and are confusingly similar to, the D&G Marks in sight, meaning, connotation, and commercial impression, and are used with goods that are the same as, closely related to, or overlapping with the goods covered by the D&G Marks. These goods are promoted to the same or similar class of consumers, and at least in some cases, are available through the same or similar channels of trade.

23. TXT's products so resemble D&G's products bearing the D&G Marks that it is likely to cause confusion or mistake or to deceive customers and the public in general, thereby resulting in damage to D&G and its D&G Marks under 15 U.S.C. § 1114 *et seq.* and 15 U.S.C. § 1125(a).

24. TXT's products and the marks on them so closely resemble the D&G Marks as to be likely to cause confusion or mistake or to deceive persons by creating the erroneous impression that TXT's products originated with or came from D&G, or are authorized, licensed, endorsed, sponsored by, or are connected in some way with D&G, and therefore are injurious to D&G under 15 U.S.C. § 1125(a).

25.     The TXT Marks are nearly identical to the D&G Marks such that sunglass and eyewear products bearing the TXT Marks are counterfeits within the meaning of 15 U.S.C. § 1114 and § 1116 *et seq.*

26.     The TXT Marks are "counterfeit marks" within the meaning of U.S.C. § 1116 *et seq.*

27.     Consumers have come to know and recognize D&G's marks and associate D&G's D&G Marks with goods produced, advertised, marketed, distributed, and sold via D&G licensees or sub-licensees. D&G thus has built up substantial goodwill in connection with the sale of its products by its licensing partners under its D&G Marks, such that the D&G Marks are identified and associated exclusively with D&G. TXT's efforts to manufacture, sell and distribute its eyewear products unfairly trade on D&G's goodwill, and thus TXT has caused and will continue to cause damage to D&G.

28.     TXT's sunglass and eyewear products bearing the TXT Marks are of inferior construction and quality as the sunglass and eyewear goods sold under the D&G Marks.

29.     The use by TXT of the TXT Marks on sunglass and eyewear goods dilutes the D&G Marks by tarnishing the reputation and goodwill of the D&G Marks and therefore, is actionable as trademark dilution within the meaning of 15 U.S.C. § 1125(c) and the common law.

30.     The use by TXT of the TXT Marks in sunglass and eyewear goods dilutes the distinctive quality of the D&G Marks and therefore, is actionable as trademark dilution within the meaning of 15 U.S.C. § 1125(c).

31.     The TXT Marks are obviously intended to trade on the goodwill of the D&G Marks as shown in the below images displaying genuine D&G goods to the TXT goods bearing the TXT Marks.

**Genuine D&G Marks**          **TXT Marks**

| **Genuine D&G Marks** | **TXT Marks** |
|---|---|















**<u>D&G Marks</u>**                          **<u>TXT Marks</u>**



### C.    TXT's Sale of Infringing Products

32.    On information and belief, TXT knowingly and intentionally, through a distribution network, sends its infringing eyewear products to locations throughout the United States and worldwide for re-sale to consumers.  Specifically, TXT sells primarily to national distributors in case quantities, who then distribute TXT products to retailers nationwide for resale to consumers.

33.    TXT also sells its infringing eyewear products on the Internet, specifically on eBay, Amazon and at its website at www.igeyewear.com.

34.    TXT knows and intends that its products, including the infringing products that are the subject of this Complaint, are being distributed and ultimately sold, and will in the future be distributed and ultimately sold, across the nation. Because of that, and because TXT takes no specific steps to avoid its products being distributed or sold in Ohio, TXT further knows and intends that its products, including the infringing products that are the subject of this Complaint, are being distributed and ultimately sold to Ohio consumers, and will in the future be distributed and ultimately sold to Ohio consumers.

11

35.     TXT's products, including the products that are the subject of this Complaint, are being sold, and in the future (barring injunctive relief) will be sold, to consumers in Ohio and in this District.

36.     D&G, as the party with priority and as the owner of the famous D&G Marks, has suffered and will continue to suffer damages from the continued presence of TXT's infringing products in the marketplace because those products and the TXT Marks are substantially and confusingly similar to D&G's D&G Marks in that they comprise design marks which utilize stylized, interlocking letters that may be construed as "D" and "G" and create the same commercial impression and/or colorable imitation of D&G's D&G Marks in violation of D&G's rights under 15 U.S.C. § 1114 et seq.

37.     Consumers have come to know and recognize D&G's marks and associate D&G's D&G Marks with goods produced, advertised, marketed, distributed, and sold, either directly or indirectly via license, by D&G.  D&G thus has built up substantial goodwill in connection with the sale of its products under its D&G Marks, such that the D&G Marks are identified and associated exclusively with D&G.  TXT's products unfairly trade on D&G's goodwill, and thus TXT's manufacture and sale of those products have caused and will continue to cause damage to D&G.

38.     The TXT Marks trade upon the fame and renown of the D&G Marks and dilute the distinctive nature of the D&G Marks, and tarnish the reputation and goodwill associated with the D&G Marks, thereby causing damage to D&G.

**D.      TXT's Infringement Is Willful and Deliberate**

39.     Upon information and belief, the foregoing conduct by TXT has been willful and deliberate, specifically intended by TXT to trade off on the goodwill, fame

and secondary meaning associated with the famous D&G Marks, and to "palm off" its products as being those of D&G.

40.     On information and belief, TXT has repeatedly engaged in a pattern of behavior that suggests a willful intention to register and use design marks which closely imitate the registered trademarks of high-end fashion and luxury goods companies. TXT has been the subject of trademark opposition proceedings before the United States Patent and Trademark Office by Coach Services, Inc. (Proceeding No. 91200464 and Proceeding No. 91210463), as well as Chanel, Inc. (Proceeding No. 78920905). Like D&G, Coach Services, Inc. and Chanel, Inc. are entities engaged in the sale and distribution of high-end fashion and luxury goods, including sunglasses. TXT's repeated attempts to register similar trademarks, including those of D&G, show a willful and deliberate intent to create confusion, mistake, or deceive consumers regarding the source of TXT's goods.

41.     Unless TXT is preliminarily and permanently enjoined by this Court, D&G will suffer irreparable injury and lost goodwill associated with the D&G Marks by TXT's willful and deliberately infringing conduct as alleged above.

**COUNT I**
**INFRINGEMENT OF TRADEMARK/**
**FALSE ENDORSEMENT/FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. §§ 1114 and 1125(a))**

42.     D&G incorporates by reference the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

43.     D&G owns all registered and common law rights in the D&G Marks. Under 15 U.S.C. § 1115, the registered trademarks are *prima facie* evidence of the

validity of the marks and of D&G's exclusive rights to use or license to others for use, the D&G Marks in commerce.

44.     The D&G Marks are widely recognized by the general consuming public of the United States as designating the source of various goods and services originating with D&G.

45.     The D&G Marks have become famous and have acquired secondary meaning to the consuming public.

46.     TXT's use of the TXT Marks on sunglasses and eyewear goods is likely to cause, and upon information and belief, has caused consumer confusion among relevant consumers.

47.     By intentionally using the D&G Marks in commerce without D&G's permission, and which upon information and belief it intends to continue to operate as alleged above, TXT is deliberately, intentionally and willfully infringing upon the D&G Marks and the goodwill associated by the public with the D&G Marks, and falsely making it appear that D&G endorses, sponsors, or is otherwise affiliated with TXT.

48.     TXT has deliberately used and registered the TXT Marks in order to intentionally deceive and mislead consumers and the public at large.

49.     TXT's conduct as alleged constitutes a willful violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50.     If not preliminarily and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116, TXT will continue to advertise and display, and will sell, distribute and otherwise exploit the D&G Marks for their own commercial use in violation of D&G's rights under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

51.     D&G also seek monetary damages and attorneys' fees for TXT's willful use and advertising of the D&G Marks.

52.     TXT's intentional and willful conduct entitles D&G to an award of treble damages and attorneys' fees under 15 U.S.C. § 1117(a).

53.     The foregoing conduct of TXT further constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

54.     D&G has no adequate remedy at law.

**COUNT II**
**DILUTION OF TRADEMARK**
**(15 U.S.C. § 1125 (c))**

55.     D&G incorporates by reference the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

56.     D&G and the Dolce Gabbana Group of companies as a whole have become nationally and internationally known in the luxury fashion industry, and the D&G Marks have become famous and distinctive, through registration and widespread promotion and use, and having acquired secondary meaning to the consuming public.

57.     By deliberately, intentionally and willfully displaying their infringing marks on their product, and by contracting with a distributor for distribution and sales throughout the United States, TXT has made a deliberate decision to market its products in all 50 states, including Ohio. TXT has used its infringing marks, which have already resulted in actual dilution thereof by blurring and tarnishment, in violation of 15 U.S.C. § 1125(c).

58.     By advertising and marketing their products using the TXT Marks in a large font of capital letters, TXT has intentionally blurred and tarnished the distinctive quality and goodwill of the D&G Marks in the eyewear and fashion industries.

15

59.     By reason of the foregoing, TXT has deliberately, willfully and knowingly diluted and threatened to further dilute the rights of D&G in the D&G Marks, and to willfully usurp the goodwill and reputation associated with the D&G Marks in the eyewear and fashion industries.

60.     Unless preliminarily and permanently enjoined by this Court, TXT will continue to dilute, and to cause serious and irreparable harm and damage to the reputation and goodwill associated with the D&G Marks.

61.     D&G has no adequate remedy at law.

## COUNT III
## FEDERAL UNFAIR COMPETITION
## (15 U.S.C. § 1125(a))

62.     D&G incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

63.     The D&G Marks are widely recognized by the general consuming public of the United States as a designation of the source of goods sold by D&G's authorized licensees, under the D&G Marks to represent D&G.

64.     TXT has utilized the D&G Marks without D&G's permission, with the intent to create an association and affiliation with D&G, and to trade on D&G's fame by usurping the goodwill of the D&G Marks.

65.     The continued use by TXT of the D&G Marks will continue to result in deception and confusion of the public as to the source of their products and possibly other goods as genuine products of D&G, and constitutes unfair competition and violation of the federal Lanham Act, 15 U.S.C. § 1125(a), and violation of the D&G's exclusive rights to exploit the D&G Marks.

66.     Unless preliminarily and permanently enjoined by this Court, TXT will continue to unlawfully advertise and exploit the famous D&G Marks, causing D&G irreparable damage and injury.

67.     D&G has no adequate remedy at law.

**COUNT IV**
**FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(15 U.S.C. § 1114(1))**

68.     D&G realleges and incorporates by reference the allegations of foregoing paragraphs of the Complaint, as though fully set forth herein.

69.     D&G alleges counterfeiting and infringement of a federally-registered trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

70.     The marks appearing on the products manufactured and sold by TXT in commerce are identical and/or substantially indistinguishable from D&G's genuine D&G Marks.  However, the TXT products are of inferior quality to D&G's genuine goods.

71.     Upon information and belief, TXT has advertised and offered its products for sale using the D&G Marks with the intention of misleading, deceiving or confusing consumers as to the origin of its goods and of trading on D&G's reputation and good will.

72.     TXT's unauthorized use of the D&G Marks in interstate commerce as described above constitutes trademark counterfeiting under 15 U.S.C. § 1114(1).

73.     As a direct and proximate result of TXT's counterfeiting activity, D&G has suffered and will continue to suffer loss of income, profits and goodwill and TXT has acquired and will continue to unfairly acquire income, profits and goodwill.

74. TXT's acts of counterfeiting and infringement will cause further irreparable injury to D&G if TXT is not restrained by this Court from further violation of D&G's rights.

75. D&G has no adequate remedy at law.

WHEREFORE, in consideration of the foregoing, Plaintiff D&G respectfully requests that this Court:

(1) Enter judgment that TXT has violated 15 U.S.C. §§ 1114(1) and 1125(a), (b) and (c).

(2) Enter a judgment canceling the TXT Registrations.

(3) Issue a seizure order and preliminary and permanent injunction:

a. Restraining, enjoining and prohibiting TXT and each of its agents, employees, officers, attorneys, successors, assigns, affiliates and any persons in privity or active concert or participation with any of them from:

    i. Using in any manner the TXT Marks in manufacturing, distributing, importing, exporting, offering for sale, selling or advertising any and all merchandise including, but not limited to, all clothing and fashion products; and

    ii. Representing that any unauthorized article or packaging manufactured, distributed, sold, held for sale, or advertised by TXT is sponsored, authorized or licensed by D&G by use of copies or simulations of the D&G Marks.

b. Requiring TXT to turn over to D&G any and all unauthorized merchandise, advertising, labels or other material bearing the D&G Marks or a facsimile thereof, that is in the possession, custody or control of TXT, its agents, employees, officers, attorneys, successors, assigns, affiliates and any persons in privity or active concert or participation with any of them; and

18

(4) Enter an ex parte seizure order permitting the seizure of TXT's entire inventory of counterfeit D&G merchandise, products bearing or infringing on the D&G Marks, and the books and records (including computerized or electronic records) related thereto; and

(5) After a hearing on the merits, issue a permanent injunction prohibiting TXT from manufacturing, advertising, selling or attempting to sell merchandise described in part I above and ordering such merchandise to be turned over to D&G and destroyed; and

(6) After a hearing on the merits, grant D&G an award of actual or statutory damages at D&G's election against TXT, where any award of actual damages should be trebled pursuant to the provisions of 15 U.S.C. § 1117, and grant D&G's costs and reasonable attorneys' fees associated with pursuing this action, and prejudgment interest, against TXT; and

(7) After a hearing on the merits, grant D&G an award of all profits realized by TXT by reason of TXT's unlawful acts herein alleged; and

(8) Grant D&G such other and further relief as the Court may deem just.

Respectfully submitted,

/s/ Eric K. Combs
Eric K. Combs (0067201)
E-Mail: eric.combs@dinsmore.com
Karen Kreider Gaunt (0068418)
Karen.gaunt@dinsmore.com
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax: (513) 977-8141

**Attorneys for Dolce & Gabbana Trademarks S.r.l.**